An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-877

Filed 5 August 2026

Cumberland County, Nos. 25JA000027-250; 25JA000028-250; 25JA000029-250; 25JA000030-250

IN THE MATTER OF: K.D., J.G., N.F., K.F., JUVENILES.

Appeal by Petitioner and Guardian ad Litem from order entered 26 June 2025 by Judge Rosalyn Hood in Cumberland County District Court. Heard in the Court of Appeals 2 June 2026.

> *Dawn M. Oxendine for Petitioner-Appellant Cumberland County Department of Social Services.*
>
> *Parent Defender Annick Lenoir-Peek, by Assistant Parent Defender Benjamin J. Kull, for Respondent-Appellee Father F.*
>
> *Lisa M. Noda for Respondent-Appellee Mother M.*
>
> *Robert W. Ewing for Respondent-Appellee Father A.*
>
> *Jeffrey L. Miller for Respondent-Appellee Father D.*
>
> *Jason Senges for Respondent-Appellee Mother G.*
>
> *Administrative Office of the Courts, by NC GAL Appellate Attorney Matthew D. Wunsche, for Guardian ad Litem.*

GRIFFIN, Judge.

Respondent-Parents appeal from an order filed 26 June 2025 dismissing allegations that four juveniles were neglected and dependent. We hold the trial court did not err in dismissing the allegations and affirm the dismissal.

## I. Factual and Procedural Background

Respondent-Mother G, Respondent-Mother M, Mr. M, and the juveniles, J.M., Noah, Keith, Jaxon, and Kevin,[1] have resided together since approximately March 2024. Respondent-Mother G is the biological mother of Kevin, Jaxon, and the deceased juvenile, J.M. Respondent-Mother M is the mother of Noah and Keith. Mr. M is the biological father of J.M. Respondent-Father A is the biological father of Jaxon. Respondent-Father D is the biological father of Kevin. Respondent-Father F is the biological father of Noah and Keith.

On 30 January 2025, five-month-old J.M. was found deceased in the bedroom he shared with his parents, Respondent-Mother G and Mr. M. That same night, between 2:15 and 2:30 a.m., Mr. M laid J.M. on the bed with both Respondent-Mother G and Mr. M. Respondent-Mother G and Mr. M "sle[pt] with their heads at the foot of the bed and [J.M.] slept between the headboard and [Mr.] M's feet." Both Mr. M and Respondent-Mother G "acknowledged being aware of the dangers of co-sleeping with an infant but disregarded this knowledge."

---

[1] Like the parties, we refer to the minor child N.F. as Noah; the minor child K.F. as Keith; the minor child J.G. as Jaxon; and the minor child K.D. as Kevin. *See* N.C. R. App. P. 42(b).

Respondent-Mother G called a Lyft at 3:38 a.m. and woke Mr. M to say goodbye. Neither Respondent-Mother G nor Mr. M checked on J.M. at that time. Mr. M initially reported that he found J.M. lying face down in the bed, unconscious and not breathing, at 8:33 a.m. Mr. M reported that he attempted CPR. However, when EMS arrived, J.M. was found on the bedroom floor, and it did not appear as if any aid had been rendered. Later, Mr. M reported that J.M. was "stiff" and he went in the shower to throw cold water on J.M., calling 911 when J.M. was unresponsive.

When emergency respondents arrived at the home, "the home was observed to be in disarray." Boric acid for bugs was spread on the floor; sticky roach traps were throughout the home; trash was strewn all over the floor and overflowing in the kitchen; and a mop bucket "containing dirty, smelly water" and a plunger were in the hallway. As of the filing of the petition, the cause of J.M.'s death was unknown. It could not "be determined if [J.M.'s] death was caused by accidental or non-accidental means."

On 4 February 2025, the Cumberland County Department of Social Services ("DSS") filed a petition alleging that the four juveniles in the home were neglected and dependent. The trial court issued nonsecure custody orders for the juveniles that same day. On 3 March and 18 March, the trial court entered orders that continued

legal and physical custody of the four juveniles in the care of DSS.[2] After a series of hearings, the trial court dictated that "[t]his matter shall come on for a hearing on the need for continued Nonsecure Custody and Adjudication, pursuant to N.C. Gen. Stat. §7B-506 on May 8, 2025."

At the 8 May hearing, DSS called the social worker assigned to the case, Lalita Beverly, as a witness. Ms. Beverly confirmed that she helped prepare a petition for the case, verified that the petition was true and accurate to the best of her information, and requested that the trial court view the petition as a verified affidavit. Without objection and upon agreement of "all parties," DSS tendered the petition. The DSS attorney read the petition into the record. After the DSS attorney questioned Ms. Beverly, the trial court granted other parties, including the Guardian ad Litem ("GAL"), an opportunity to examine the witness. Ms. Beverly was questioned by Respondent-Father A's attorney and Mr. M's attorney. At the close of DSS's evidence, the DSS attorney "request[ed] that [the trial court] adjudicate" and "find that there is neglect and dependency in this case." Counsel for Respondent-Mother M made a Motion to Dismiss. Counsel for Respondent-Father F, Respondent-Father D, Mr. M, and Respondent-Mother G followed suit, respectively. Counsel for Respondent-Father A requested that the case not be dismissed.

---

[2] Respondent-Father A received "[t]wenty-[e]ight (28) consecutive days of unsupervised visitation with the juvenile [Jaxon]" in the 18 March order. Pursuant to the 7 April 2025 order, Jaxon was placed with Respondent-Father A. On 22 May 2025, the trial court dissolved the nonsecure custody order for Jaxon and placed him in the custody of Respondent-Father A.

In an oral finding, the trial court noted that "the filed Petition was entered without objection" and adopted said petition as "true testimony, unrefuted." In the 26 June 2025 written order, the trial court made factual findings consistent with the juvenile petitions. The trial court dismissed the juvenile petition after finding that DSS "ha[d] failed to prove the juveniles were neglected or dependent by clear and convincing evidence." DSS provided timely notice of appeal on 2 July 2025. The GAL provided timely notice of appeal, through the juvenile Kevin, on 18 July 2025. On 4 February 2026, the remaining Respondent-Parents filed a motion to strike Respondent-Father A's brief.

## II. Analysis

DSS and the GAL appeal the dismissal of the neglect and dependency allegations. The parties each present a variation of similar issues which equate to the following, which we address: whether the trial court (1) erred in dismissing the allegation of neglect; (2) erred in dismissing the allegation of dependency; and (3) complied with the adjudicatory process required by the Juvenile Code.

We affirm the dismissal of the neglect and dependency allegations and hold that, while there was a statutory mandate, the GAL failed to establish sufficient prejudice from the alleged non-compliance with the adjudicatory process.

Before we begin our analysis, we must address the motion to strike Respondent-Father A's brief and related motions. The movants[3] argue because Respondent-Father A never filed any notice of appeal, he waived his right to appeal. "Any party entitled to an appeal under N.C. Gen. Stat. § 7B-1001(a) may take appeal by filing notice of appeal with the clerk of superior court . . . and by serving copies of the notice of appeal on all other parties." N.C. R. App. P. 3.1. North Carolina Rule of Appellate Procedure 10(c) dictates that:

> [A]n appellee may list proposed issues on appeal in the printed record based on any action or omission of the trial court that was properly preserved for appellate review and that deprived the appellee of an alternative basis in law for supporting the judgment, order, or other determination from which appeal has been taken. An appellee's list of proposed issues on appeal shall not preclude an appellee from presenting arguments on other issues in its brief.

N.C. R. App. P. 10(c). This Court has previously declined to strike the brief of a party to a matter who effectively "[stood] in the shoes of the appellant" despite not appealing. *In re G.B.G.*, 297 N.C. App. 772, 777–79, 913 S.E.2d 249, 254–55 (2025). Moreover, Respondent-Father A largely advances arguments made by the GAL and DSS—true appellants in this case.[4] We decline to strike Respondent-Father A's brief

---

[3] The movants are comprised of the remaining Respondent-Parents: Respondent-Father F, Respondent-Father D, Respondent-Mother M, and Respondent-Mother G.

[4] Respondent-Father A introduces the novel argument that "all of the parties stipulated that the allegations in the juvenile petition could be viewed as a verified affidavit." Thus, Respondent-Father A contends "the trial court made the erroneous determination that the children were not neglected juveniles" by disregarding the stipulations as "not true."

and accordingly deny the movants' motion to strike.

## A. Rule 41(b) Motion to Dismiss

We first review whether the trial court erred in dismissing the allegations of neglect and dependency. At the conclusion of DSS's case, Respondent-Parents, except Respondent-Father A, made motions to dismiss. These were made pursuant to Rule 41(b), which states, in relevant part:

> After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.

N.C. R. Civ. P. 41(b) (2025). The trial judge "becomes both the judge and the jury and he must consider and weigh all competent evidence before him." *Walsh v. Jones*, 263 N.C. App. 582, 586, 824 S.E.2d 129, 133 (2019) (quoting *Hill v. Lassiter*, 135 N.C. App. 515, 517, 520 S.E.2d 797, 800 (1999)). In so doing, the trial judge "must pass

---

> A record of specific stipulated adjudicatory facts shall be made by either reducing the facts to a writing, signed by each party stipulating to them and submitted to the court; or by reading the facts into the record, followed by an oral statement of agreement from each party stipulating to them.

N.C. Gen. Stat. § 7B-807(a) (2025). The DSS attorney did state that "all parties have agreed to allow the tendering of the [p]etition" and proceeded to read the petition into the record. The trial court adopted the petition as "true testimony, unrefuted." However, there is no indication in the record that the parties made an oral statement agreeing to the testimony as "stipulations" nor an agreement in writing. Therefore, there were no stipulations.

upon the credibility of the witnesses, the weight to be given their testimony and the reasonable inferences to be drawn from them." *Id.* A dismissal pursuant to Rule 41(b) need only be granted if the plaintiff "has shown no right to relief or . . . has made out a colorable claim but the court nevertheless determines as the trier of fact that the defendant is entitled to judgment on the merits."[5] *Id.* at 587, 824 S.E.2d at 133. While dismissal under Rule 41(b) "is left to the sound discretion of the trial court[,]" *Beck v. Beck*, 175 N.C. App. 519, 523, 624 S.E.2d 411, 414 (2006) (citation omitted), North Carolina appellate courts "generally disfavor dismissal of a custody action under Rule 41(b)." *Walsh*, 263 N.C. App. at 586, 824 S.E.2d at 132.

Our Supreme Court has stated that, when reviewing a trial court's ruling to dismiss involuntarily an action on the merits pursuant to Rule 41(b), we "must determine whether the trial court's findings of fact are supported by competent evidence and whether those findings support the court's conclusions of law." *Mussa v. Palmer-Mussa*, 366 N.C. 185, 191, 731 S.E.2d 404, 408 (2012); *see also In re Howell*, 294 N.C. App. 162, 169–70, 903 S.E.2d 197, 202–03 (2024) (holding where defendant

---

[5] DSS argues that "[t]he Department made out a prima facie case of both neglect and dependency that required adjudication and factual findings, not premature dismissal." However, "[a] motion for dismissal pursuant to [Rule 41(b)] . . . provides a procedure whereby the judge may weigh the evidence, determine the facts, and render judgment on the merits against [the] plaintiff, even though [the] plaintiff may have made out a *prima facie* case." *In re Oghenekevebe*, 123 N.C. App. 434, 437, 473 S.E.2d 393, 396 (1996) (citation omitted). Therefore, a Rule 41(b) dismissal is appropriate even if DSS made out a *prima facie* case. Moreover, DSS argues that the verified petition and lack of evidence to refute DSS's case renders the dismissal an abuse of discretion. The verified petition was accepted into evidence and later comprised the adjudicatory findings of the order. However, as demonstrated throughout this opinion, the trial court did not err in dismissing the neglect and dependency allegations despite relying on the contents of the verified petition.

moves for insufficiency of evidence at the close of the plaintiff's presentation of the evidence, the appellate court reviews to discern "(1) whether the findings of fact by the trial court are supported by competent evidence, and (2) whether the findings of fact support the trial court's conclusions of law and its judgment"). "[F]indings of fact by the trial court supported by competent evidence are binding on the appellate courts even if the evidence would support a contrary finding. Conclusions of law are, however, entirely reviewable on appeal." *Mussa*, 366 N.C. at 191, 731 S.E.2d at 408–09 (quoting *Scott v. Scott*, 336 N.C. 284, 291, 442 S.E.2d 493, 497 (1994)). Unchallenged findings of fact are "presumed to be supported by competent evidence and [are] binding on appeal." *Id.* at 191, 731 S.E.2d at 409 (quoting *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991)). DSS does not challenge the trial court's findings of fact. Consequently, the only issue before us is whether the trial court's findings support its conclusions of law.

### 1. The trial court's findings support dismissing the allegation of neglect.

DSS argues that there is "ample, unrefuted evidence demonstrating that the juveniles were neglected." A neglected juvenile is, in relevant part, "any juvenile less than 18 years of age . . . whose parent, guardian, custodian, or caretaker . . . does not provide proper care, supervision, or discipline . . . [or] [c]reates or allows to be created a living environment that is injurious to the juvenile's welfare." N.C. Gen. Stat. § 7B-101(15)(a), (e) (2025). Allegations of neglect "shall be proved by clear and convincing evidence." N.C. Gen. Stat. § 7B-805 (2025). "Traditionally, there must be some

physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment as a consequence of the failure to provide proper care, supervision, or discipline in order to adjudicate a juvenile neglected." *In re K.S.*, 380 N.C. 60, 64–65, 868 S.E.2d 1, 4 (2022) (citation modified); *see In re G.C.*, 384 N.C. 62, 69, 884 S.E.2d 658, 663 (2023) (quoting *In re J.A.M.*, 372 N.C. 1, 9, 822 S.E.2d 693, 698 (2019)). In determining whether a juvenile is neglected, "it is relevant whether that juvenile lives in a home where another juvenile has died as a result of suspected abuse or neglect[.]" N.C. Gen. Stat. § 7B-101(15) (2025); *see also In re C.M.*, 183 N.C. App. 207, 210, 644 S.E.2d 588, 592 (2007). This does not, however, mandate removal. The trial court has "some discretion in determining whether children are at risk for a particular kind of harm given their age and the environment in which they reside." *C.M.*, 183 N.C. App. at 210, 644 S.E.2d at 592 (quoting *In re McLean,* 135 N.C. App. 387, 395, 521 S.E.2d 121, 126 (1999)); *see In re Nicholson*, 114 N.C. App. 91, 93–94, 440 S.E.2d 852, 853–54 (1994) (holding a trial court did not abuse its discretion in finding a three-year-old was not at risk for neglect after another child in the household died due to shaken-baby syndrome).

DSS contends the juveniles were raised in an environment hazardous to a child's welfare due to the boric acid spread across the floors, the insect traps "accessible to crawling children," and trash strewn throughout the home. Moreover, DSS cites "repeated co-sleeping" with J.M., despite awareness of dangers posed by

doing so, as a "substantial risk of harm."[6]

In our Supreme Court's review of cases where "neglect" of a juvenile has been determined, "the conduct at issue constituted either severe or dangerous conduct or a pattern of conduct either causing injury or potentially causing injury to the juvenile." *In re Stumbo*, 357 N.C. 279, 283, 582 S.E.2d 255, 258 (2003). In the present case, as found in Finding of Fact 20, emergency responders observed on one occasion that the home was in "disarray," with pesticide spread on the floor, roach traps and overflowing trash scattered throughout the home, and a mop bucket with dirty water and a plunger in the hallway. "It is the province of the trial court when sitting as the fact-finder to assign weight to particular evidence and to draw reasonable inferences therefrom" so long as those inferences do not "rest on conjecture or surmise." *In re K.L.T.*, 374 N.C. 826, 843, 845 S.E.2d 28, 41 (2020) (internal citations omitted). The isolated report of clutter contains observations about both trash and cleaning supplies, the latter of which one could infer was an attempt to rectify conditions created by the former. *See id.* at 844, 845 S.E.2d at 41 (holding that "cleanliness

---

[6] DSS argues "co-sleeping by a single caregiver in a home filled with environmental hazards" demonstrates the type of environment necessary to adjudicate neglect, citing *In re T.S., III*, 178 N.C. App. 110, 113–14, 631 S.E.2d 19, 22–23 (2006). While *In re T.S.* does demonstrate injurious conditions that created a significant risk of harm in the absence of injury to the juveniles, the "conditions" in that case as compared to the case at hand are quite different. In that case, the trial court found that the "children were subjected to acts of domestic violence, that [the] respondent abused illegal substances, that during a police stop the children were not in carseats and [the] respondent's angry outburst in the presence of the children led to her arrest, that [the] respondent threatened a social worker in front of the children, that a firearm was found in the home . . . and that [the] respondent refused to cooperate with DSS's efforts to improve the problems in the home." *Id.* at 113, 631 S.E.2d at 22.

issues" were not sufficiently indicative of a future likelihood of neglect because, while the respondent-mother's residence was "cluttered and dirty on one occasion," the respondent-mother addressed the issue by employing a cleaning service and assigning members of the household "additional cleaning responsibilities"); *see also G.B.G.*, 297 N.C. App. at 784, 913 S.E.2d at 258 (holding that the trial court could infer an environment was not injurious to a child despite the "cluttered and dirty condition of the home").

Moreover, DSS fails to demonstrate how the house's conditions affect the surviving juveniles. While the roach traps on the floor may have been "accessible to crawling children," the youngest juvenile was five years old at the time of the 4 February 2025 petition. There is no evidence to indicate that any of the surviving juveniles are "crawling." Furthermore, there is no evidence to indicate that Noah, Keith, Jaxon, or Kevin sleep in the same bed as any of the adults in the household. Therefore, the "dangerous sleep practices" do not apply to this matter. Even assuming *arguendo* the juveniles did sleep in the same bed as the adults, the dangers of co-sleeping are markedly less with juveniles ages five, eleven, fourteen, and sixteen. *See C.M.*, 183 N.C. App. at 210, 644 S.E.2d at 592 ("Section 7B-101(15) affords 'the trial court some discretion in determining whether children are at risk for a particular kind of harm given their age and the environment in which they reside.'" (quoting *McLean,* 135 N.C. App. at 395, 521 S.E.2d at 126).

Finally, DSS argues that "a prior history of domestic violence" contributes to

the substantial risk of impairment faced by the juveniles. Finding 19 of the trial court's order notes that "[Mr.] [M] and Respondent[-]Mother [G] have a history of domestic violence in the home." "In determining whether a child is neglected, domestic violence in the home contributes to an injurious environment." *In re J.W.*, 241 N.C. App. 44, 50, 772 S.E.2d 249, 254 (2015); *see also In re M.K.*, 241 N.C. App. 467, 475, 773 S.E.2d 535, 541 (2015) (holding "[w]here the evidence clearly and convincingly shows such exposure [to domestic violence] negatively impacts the child, and places the child at risk, that evidence may support an adjudication of neglect"). Domestic violence, however, does not dispositively mandate an adjudication of neglect. The trial court made no findings on exposure of the children to the domestic violence nor the effect thereof.[7] Therefore, the trial court's findings support its conclusion of law dismissing the neglect allegation. *See Mussa*, 366 N.C. at 191, 731 S.E.2d at 409.

## 2. *The trial court's findings support dismissing the allegation of dependency.*

DSS further argues that the trial court erred by dismissing the allegations of dependency. A dependent juvenile is "in need of assistance or placement because (i) the juvenile has no parent, guardian, or custodian responsible for the juvenile's care or supervision or (ii) the juvenile's parent, guardian, or custodian is unable to provide

---

[7] DSS attempted to enter a 911 call log into evidence that they contended contained "indications of domestic disputes." That evidence, however, was not admitted.

for the juvenile's care or supervision and lacks an appropriate alternative child care arrangement." N.C. Gen. Stat. § 7B-101(9) (2025). Under the second prong of this definition, "the trial court must address both (1) the parent's ability to provide care or supervision, and (2) the availability to the parent of alternative child care arrangements." *In re B.C.*, 298 N.C. App. 153, 167, 914 S.E.2d 52, 63 (2025) (quoting *In re P.M.*, 169 N.C. App. 423, 427, 610 S.E.2d 403, 406 (2005)). Allegations of dependency shall be proven by clear and convincing evidence. N.C. Gen. Stat. § 7B-805.

Notably, the initial petition filed on 4 February 2025 solely alleged that the juveniles were dependent because "the juvenile[s] need[] assistance of placement because the juvenile[s] ha[ve] no parent, guardian, or custodian responsible for the juvenile[s'] care or supervision." On appeal, however, DSS argues that "the parents were unable to provide proper care or supervision during the relevant period and lacked any appropriate alternative childcare arrangement." These criteria are relevant to the alternative statutory definition of dependency. *See B.C.,* 298 N.C. App. at 167, 914 S.E.2d at 63. Respondent-Parents, except Respondent-Father A, contend this is equivalent to "swapping horses." *See M.E. v. T.J.*, 380 N.C. 539, 563, 869 S.E.2d 624, 639 (2022) ("When an examination of the record discloses that the cause was not tried upon that theory below, the law does not permit parties to swap horses between courts in order to get a better mount." (citation modified)). However, "if the specific factual allegations of the petition are sufficient to put the respondent

on notice as to each alleged ground for adjudication, the petition will be adequate." *In re D.C.*, 183 N.C. App. 344, 350, 644 S.E.2d 640, 643 (2007). Moreover, the original petition did allege that the juveniles were dependent. *Compare In re M.G.*, 363 N.C. 570, 575, 681 S.E.2d 290, 293 (2009) (holding that amendment of a petition to include additional factual allegations was permissible because "the original petition alleged that each child . . . was abused as defined by [N.C. Gen. Stat.] § 7B-101(1)"), *with D.C.*, 183 N.C. App. at 350, 644 S.E.2d at 643 (reversing an adjudication of neglect where dependency, not neglect, was the claim checked in the petition). Therefore, DSS did not automatically "swap horses" by arguing the alternative theory of dependency.

However, DSS does not provide "specific factual allegations" necessary to put Respondent-Parents on notice. *See In re M.M.*, 291 N.C. App. 571, 576, 896 S.E.2d 289, 293 (2023) (holding where DSS checked the box on the petition alleging abuse and attached additional pages to the petition with detailed facts supporting the allegations, the petition contained "sufficient factual allegations" to put the parties on notice despite not checking the specific statutory basis for abuse). DSS argues that "no relative, family member, or other responsible adult was available, willing, and able to provide safe care for the surviving juveniles at the time of removal." DSS also contends the requirement that the parent "lacks an appropriate alternative childcare arrangement" is satisfied. Moreover, DSS asserts that "[c]ourts have recognized that chronic filth, dangerous household items, and hazardous materials

within reach of children are compelling indicators of a parent's inability to provide appropriate care." None of these assertions are supported by evidence from the record nor case law verifying such claims. Furthermore, no such factual allegations appear either in the petition or the adjudicatory findings of the court. Therefore, "the cause was not tried upon [the current] theory" in the trial court, and DSS is not permitted to argue it before this Court. *See M.E.,* 380 N.C. at 563, 869 S.E.2d at 639 (quoting *Weil v. Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934)).

DSS also does not demonstrate evidence supporting the statutory basis alleged in the petition: "the juvenile[s] ha[ve] no parent, guardian, or custodian responsible for the juvenile[s'] care or supervision." N.C. Gen. Stat. § 7B-101(9). As is established by Findings of Fact 5, 6, and 12, each juvenile had a biological parent in the home; furthermore, the trial court did not conclude that the juveniles were subject to neglect, nor were there additional allegations of abuse. *See In re J.A.G.*, 172 N.C. App. 708, 716, 617 S.E.2d 325, 332 (2005).

Therefore, the trial court's findings support dismissing the dependency allegation. *See Mussa,* 366 N.C. at 191, 731 S.E.2d at 409.

**B. N.C. Gen. Stat. § 7B-802.**

Next, we review whether the trial court complied with the adjudicatory process required by the Juvenile Code. The GAL argues the trial court dismissed the petitions "without holding an evidentiary hearing sufficient to adjudicate whether the children were neglected and dependent juveniles and without making adequate

evidentiary findings of fact, as required by the Juvenile Code." The GAL contends the order should be vacated and the matter remanded for a new hearing.

The GAL concedes that the GAL attorney advocate did not raise the issue before the trial court. Nevertheless, the GAL contends the issue is preserved because the trial court violated the statutory mandate prescribed in N.C. Gen. Stat. § 7B-802 (2025). "When an appellant argues the trial court failed to follow a statutory mandate, the error is preserved, and the issue is a question of law and reviewed *de novo*." *In re J.C.-B.*, 276 N.C. App. 180, 192, 856 S.E.2d 883, 892 (2021). For a statutory mandate to automatically preserve an issue for appellate review, it must, in relevant part, "require[] a specific act by a trial judge." *In re E.D.*, 372 N.C. 111, 121, 827 S.E.2d 450, 457 (2019). GAL argues that Section 7B-802 contains a statutory mandate. In accordance with Section 7B-802, "[t]he adjudicatory hearing shall be a judicial process designed to adjudicate the existence or nonexistence of any of the conditions alleged in a petition. In the adjudicatory hearing, the court shall protect the rights of the juvenile and the juvenile's parent to assure due process of law." N.C. Gen. Stat. § 7B-802. "It is well established that the word shall is generally imperative or mandatory." *Multiple Claimants v. N.C. Dep't of Health & Hum. Servs.*, 361 N.C. 372, 378, 646 S.E.2d 356, 360 (2007) (citation modified); *see also In re Cline*, 230 N.C. App. 11, 19, 749 S.E.2d 91, 97 (2013); *In re Eades*, 143 N.C. App. 712, 713, 547 S.E.2d 146, 147 (2001). Section 7B-802 contains the word "shall." N.C. Gen. Stat. § 7B-802. Therefore, it is a statutory mandate.

However, "to obtain relief on appeal, an appellant must not only show error, but that the error was material and prejudicial, amounting to denial of a substantial right that will likely affect the outcome of an action." *In re L.R.L.B.*, 377 N.C. 311, 326, 857 S.E.2d 105, 118 (2021) (citation modified). Our Supreme Court has endorsed this view within the context of statutory mandates. "When a trial court acts contrary to a statutory mandate *and* a defendant is prejudiced thereby, the right to appeal the court's action is preserved, notwithstanding a defendant's failure to object at trial." *In re K.N.*, 381 N.C. 823, 827, 874 S.E.2d 594, 598 (2022) (citation modified). In this case, the GAL has not demonstrated sufficient prejudice. The GAL argues the "risk of an unreliable decision was high" because the trial court only heard the contents of the juvenile petition, it was unclear what type of hearing was being held, and the trial court did not make proper findings of fact supporting its decision.

The GAL argues that this adjudicatory order "amounted to a judgment on the pleadings." The GAL cites cases, including *Thrift v. Buncombe Cnty. Dep't of Soc. Servs.* where this Court reversed juvenile orders based solely on documentary evidence. *See Thrift v. Buncombe Cnty. Dep't of Soc. Servs.*, 137 N.C. App. 559, 562–64, 528 S.E.2d 394, 396–97 (2000) (reversing an adjudication of neglect based solely on the allegations in a juvenile petition); *In re A.M.*, 192 N.C. App. 538, 542, 665

S.E.2d 534, 536 (2008)[8] (reversing a parental rights termination order where "the trial court entered an order based solely on the written reports of DSS and the guardian *ad litem*, prior court orders, and oral arguments by the attorneys involved in the case"). This case, however, is similar to *In re Z.G.J.*, 378 N.C. 500, 506–08, 862 S.E.2d 180, 186–87 (2021). In that case regarding termination of parental rights, a social worker was called to the stand, where she orally reaffirmed the allegations from the termination petition. *Id.* The petition was then admitted without objection into the record. *Id.* Neither the trial court nor the other parties chose to cross-examine the social worker despite having the opportunity to do so. *Id.* Our Supreme Court noted the "salient difference" between *In re Z.G.J.* and cases mandating reversal was live testimony. *Id.* This Court has adopted this reasoning in abuse and neglect cases. *See In re N.N.*, 296 N.C. App. 159, 166, 907 S.E.2d 430, 437 (2024) (upholding adjudication for abuse and neglect where counsel for respondents "specifically stated they had no objection to the trial court receiving the verified petition as evidence after the social worker's testimony" and declined to cross-examine the social worker). In the present case, Ms. Beverly confirmed and verified that the petition was true and accurate. The other parties then had an opportunity to cross-examine Ms. Beverly. Therefore, the determinative factor, live testimony

---

[8] Notably, this Court also held that "trial courts may continue to rely upon properly admitted reports or other documentary evidence and prior orders, *as long as a witness or witnesses are sworn or affirmed and tendered to give testimony.*" *A.M.*, 192 N.C. App. at 542, 665 S.E.2d at 536 (emphasis added).

testifying to the truth of the petition and ability to cross-examine said witness, was present. *See id.* at 167, 907 S.E.2d at 437. The GAL was not prejudiced by the documentary evidence.

Here, the GAL is correct in asserting the trial court did not hold a specifically labelled pre-adjudication hearing or conference. The Juvenile Code mandates the court consider several factors in a pre-adjudication hearing, including identification of the parties to the proceeding; efforts to establish paternity; "whether all summons, service of process, and notice requirements have been met[;]" proper verification of the petition and jurisdiction; and any pretrial motions. N.C. Gen. Stat. § 7B-800.1(a) (2025). However, "[t]he pre-adjudication hearing may be combined with a hearing on the need for nonsecure custody or any pretrial hearing or conducted in accordance with local rules." N.C. Gen. Stat. § 7B-800.1(b) (2025). The Nonsecure Custody Hearing on 7 April 2025 satisfied many of these requirements. Under "Jurisdictional Findings[,]" the trial court affirmed that the petition filed on 4 February 2025 was "appropriately signed and verified." Moreover, the order confirmed paternity of Kevin and Jaxon and ordered DNA testing to determine paternity of Noah and Keith. The trial court also found that DSS "has made and is continuing to make reasonable efforts to prevent the need for the juveniles['] . . . placement outside of the home attempting to find suitable relatives who may be willing and able to provide temporary care for the juveniles." Furthermore, the trial court considered pre-trial motions. Respondent-Father D "made an oral motion to continue the *adjudication* in

this matter." (Emphasis added). The continuance was granted pursuant to N.C. Gen. Stat. § 7B-803 (2025). The trial court further considered the pre-adjudicatory requirements during the 8 May 2025 hearing. The trial court "got all parties" and identified their involvement. Moreover, the trial court allowed the parties to "inquire as to service." Therefore, pursuant to N.C. Gen. Stat. § 7B-800.1(b), the considerations for a pre-adjudication hearing were satisfied.[9]

Finally, the GAL argues that the trial court's findings of fact are mere recitations of the allegations in the juvenile petitions. An "adjudicatory order shall be in writing and shall contain appropriate findings of fact and conclusions of law." N.C. Gen. Stat. § 7B-807(b). This Court has established, however, that:

> it is not *per se* reversible error for a trial court's fact findings to mirror the wording of a petition or other pleading prepared by a party. Instead, this Court will examine whether the record of the proceedings demonstrates that the trial court, through processes of logical reasoning, based on the evidentiary facts before it, found the ultimate facts necessary to dispose of the case. If we are confident the trial court did so, it is irrelevant whether those findings are taken verbatim from an earlier pleading.

---

[9] Notably, several parties' counsel demonstrated their understanding that the 8 May 2025 hearing would culminate in adjudication. At the close of DSS's evidence, DSS counsel "request[ed] that [the trial court] adjudicate." At the conclusion of the hearing, DSS counsel stated that she "think[s] [the trial court] can find neglect and dependency." Moreover, at the beginning of the proceeding, counsel for Respondent-Father A stated that his client was "ready for [a]djudication" and counsel for Respondent-Mother M said her client was "in the same position." DSS counsel did state "the Petitioner cannot ensure the safety of the juveniles and is in need of a nonsecure custody order in favor of the Petitioner." However, this was solely recitation of the petition originally filed on 4 February 2025. Therefore, all parties were seemingly aware that this hearing could culminate in adjudication.

*J.W.,* 241 N.C. App. at 48–49, 772 S.E.2d at 253. If findings "cut-and-pasted" from a party's pleadings automatically mandated reversal of an order, "it would impose an impossible burden on trial court judges." *Id.* So long as "a trial court, after carefully considering the evidence, finds that the facts are exactly as alleged in a party's pleading, there is nothing wrong with repeating those same words in an order." *Id.*; *see also In re L.C.,* 253 N.C. App. 67, 71, 800 S.E.2d 82, 86 (2017) ("[W]e will only consider those findings that are, in fact, supported by evidence in the record regardless of whether they mirror the language used in the petition.").

In this case, DSS presented evidence that mirrored the allegations in the juvenile petition. As discussed, Ms. Beverly, the social worker, was present and testified as to the accuracy of the petition. *See J.W.,* 241 N.C. App. at 49, 772 S.E.2d at 254 (holding "[a]lthough many of these findings in the court's orders appear to be 'cut-and-pasted' from wording in the juvenile petitions, the findings are based on evidence presented to the court"); *cf. In re K.P.*, 249 N.C. App. 620, 626, 790 S.E.2d 744, 748 (2016) (holding that the trial court "entered its adjudication order without conducting an adjudicatory hearing" when the adjudication was supported solely by two written reports from DSS and no testimony or stipulations). Moreover, the trial court made additional findings of fact not present in the petition. For example, Finding of Fact 5 in the Order Dismissing Juvenile Petition states, in part, "[p]aternity is not at issue as to the juvenile [Kevin] inasmuch as DNA testing has confirmed Respondent[-]Father [D] to be the biological father. . . . Paternity is not at

issue for the juvenile [Jaxon] inasmuch as Respondent[-]Father [A]'s name appears on the birth certificate." Paternity was not referenced in the 4 February 2025 petition nor the verified petition introduced into testimony. However, paternity had been referenced in prior orders and the referenced birth certificate was admitted into evidence during the 8 May 2025 hearing. Thus, contrary to the GAL's assertion, the trial court's findings consisted of more than a mere recitation of the allegations in the petition. *See In re R.P.*, 276 N.C. App. 195, 202, 856 S.E.2d 868, 873 (2021) (citation omitted). Therefore, the GAL was not prejudiced because the trial court made sufficient findings of fact supporting its decision.

While there is a statutory mandate in Section 7B-802, the GAL has not demonstrated sufficient prejudice to support a reversal on appeal.

### III.    Conclusion

For the foregoing reasons, we affirm the trial court's dismissal of the allegations of neglect and dependency.

AFFIRMED.

Judges CARPENTER and STADING concur.

Report per Rule 30(e).